**UNITED STATES**

v.

**TANKER LAKE GEORGE et al.**

**No. 1701.**

United States District Court
D. Delaware.

July 22, 1954.

Leonard G. Hagner, U. S. Atty., Wilmington, Del., Warren E. Burger, Asst. Atty. Gen., Leavenworth Colby, Sp. Asst. to the Atty. Gen., Morton Liftin and Patrick F. Cooney, Attys., Dept. of Justice, Washington, D. C., for the United States.

David F. Anderson (of Berl, Potter & Anderson), Wilmington, Del., Charles H. Tuttle, Colby Stilson, Edward J. Ross and Stuart H. Johnson, Jr. (of Breed, Abbott, & Morgan), New York City, for claimant.

LEAHY, Chief Judge.

■ The United States filed a libel of information for forfeiture of the steam tanker Lake George. Four separate causes of forfeiture were stated. The first three, based on alleged violations of ship registry statutes, are not at this time involved here. The Fourth Cause of Forfeiture charges violation of §§ 2 and 9 of the Shipping Act of 1916, as amended, 46 U.S.C.A. §§ 802 and 808. United States Petroleum Carriers, Inc., a Delaware corporation (designated as Claimant), filed a special claim as owner of the vessel. Subsequently, Claimant filed exceptions to the Fourth Cause in the libel for failure to state a cause of forfeiture or any claim on which such relief could be granted. Comparable to a motion to dismiss, the exceptions admit for present purposes the well-pleaded allegations of fact in the libel. They are these:

A type T–2 tanker, The Lake George was built for the Maritime Commission [1] in 1943 and was registered as a merchant vessel of the United States. It was later offered for sale by the Maritime Commission as a surplus war-built vessel under the Ship Sales Act of March 8, 1946, 60 Stat. 41, 50 U.S.C.A.Appendix, §§ 1735–1746. This statute gave purchase preference to United States citizens, adopting the definition thereof in § 2 of the Shipping Act of 1916, as amended, 46 U.S. C.A. § 802. In September 1947, Claimant made formal application to the Commission to buy several surplus vessels, representing itself as a citizen of the United States. The representation was "contrary to the facts" in that Claimant was "under the control of aliens" and accordingly "did not qualify as a 'citizen' corporation within the meaning of the Shipping Act of 1916, as amended (46 U.S.C. § 802)". Acting on the misrepresentation in the application and other information, the Commission sold four T–2 tankers to Claimant including The Lake

---

1. On May 24, 1950, the U. S. Maritime Commission was succeeded by Department of Commerce, Maritime Administration. Reorganization Plan No. 21, 15 Fed.Reg. 3178, 64 Stat. 1273.

George, title passing about March 14, 1948. Thus, for purposes of testing the legal basis of the libel's Fourth Cause of Forfeiture, it is assumed The Lake George was a vessel owned and documented by the United States which was sold by the Maritime Commission to an alien corporation under the Ship Sales Act of 1946 upon a misrepresentation of citizenship.

The Government has chosen to seek forfeiture of the vessel rather than rescission of the sale or damages for misrepresentation. Under general principles of the law of contracts, rescission would restore the vessel to the Maritime Commission but only upon the return of the purchase price to Claimant. A civil suit premised on injury to the Government from the alleged misrepresentations could result in substantial money damages assessed against Claimant. Penal damages in a criminal action under 18 U.S.C. § 1001 or 46 U.S.C.A. § 839, for example, could result in a fine of $10,000 or $5,000 respectively.

§ 9 of the Shipping Act of 1916 [2] is cited as the statutory authority or justification for forfeiture, not the 1946 Act under which the sale to Claimant was made. Challenging the applicability of the forfeiture provisions of the 1916 Act, Claimant urges the occupancy of the field by the later Act and its sole pertinency to the sale, its integration and its absence to provide a remedy in terms of forfeiture. The construction I ascribe to § 9 eliminates the necessity of ruling upon Claimant's contention. I assume, without deciding, § 9 controls.[3]

Libellant relies on the last clause in § 9's third paragraph—"or the last documentation of which was under the laws of the United States"—as fully describing one category of vessels statutorily subject to forfeiture and independent of other categories previously described in the paragraph; and, under this disassociation of the last clause from the immediately preceding language, the citizenship of the vessel's owner-seller is immaterial.

Libellant emphasizes this contention obviates a decision as to whether the United States, as owner of The Lake George, is a "citizen of the United States" for purposes of the application of the 1916 Act. The argument for isolation of the "last documentation" clause has plausible foundation. Punctuation, the use of the disjunctive, and prior Acts furnish some support for this view. A comma precedes and sets off the clause. The disjunctive "or" introduces it. From the first Act in 1916, 39 Stat. 730, until the 1938 Act, 52 Stat. 964,[4] which is now in force, similar, though not identical, clauses have variously appeared to stand as an alternative and independent classification of subject vessels. Yet, though full rein be given the Government's arguments, they are halted short of persuasion by the wording of the clause, the legislative intent expressed during consideration of the 1938 amendment, and the sense of the statute. In considering these counter-arguments, the Government's assumption of the separateness or independence of the last clause of § 9's third paragraph will be accepted.

---

2. In pertinent part, § 9 provides: " * * * it shall be unlawful, without the approval of the United States Maritime Commission, to sell * * * to any person not a citizen of the United States, * * * any vessel or any interest therein owned in whole or in part by a citizen of the United States and documented under the laws of the United States, or the last documentation of which was under the laws of the United States."

3. Without direct reference to its applicability, courts have recently construed the effect of § 9 upon comparable sales: U. S. v. The Meacham, D.C.E.D.Va., 107 F. Supp. 997, affirmed sub. nom. Meacham Corp. v. United States, 4 Cir., 207 F.2d 535, certiorari granted 347 U.S. 932, 74 S.Ct. 631; U. S. v. Steam Screw Vessel "Tito Campanella" (Formerly U. S. Vessel "Samsylarna"), D.C.Va., Admiralty No. 357, January 27, 1954.

4. A comparison of the third paragraphs of the several Acts is found in the Appendix to this opinion.

Inclusion of the word "last" to describe which documentation subjects a vessel to forfeiture is one indicia of the scope expressly intended by the Congress to be encompassed by the clause. "Being or remaining after all the other documentations in time or order of succession" is the meaning ascribed this word in the libellant's interpretation; it is read synonymously with "most recent" in the sense of "last but continuing documentation". Claimant advances "next before the present", "a documentation which was but has since ended" and "presently undocumented" as the intended meaning in context of "last documentation". Each of the profferred variations has the imprimatur of Webster's New International. However, Claimant's version, I conclude, accurately reflects the intent of the Congress as is apparent from the purpose of the 1938 amendment and legislative reports.

The "last documentation" clause was added to § 9 in 1938 to avoid a result under the prior law as was obtained in The Helori, D.C.W.D.Wash., 24 F.2d 710. In that case, the Government sought forfeiture of a vessel sold by a citizen corporation to a non-citizen corporation without Shipping Board approval. The vessel, at one time documented, was acquired by the U. S. Navy which surrendered the documentation. Thereafter, the Navy sold the vessel undocumented to a California corporation, which without documenting it resold it to a non-citizen. Thus, at the time of the alleged illegal sale, the vessel, although owned by a citizen, was undocumented. § 9 did not then include either the clause "owned in whole or in part by a citizen of the United States", or the clause "the last documentation of which was under the laws of the United States."[5]

The Court stated § 9 applied only to a documented vessel and "the Helori" was not subject to forfeiture under that section because it was undocumented at the time of its sale to the non-citizen. At page 712 of 24 F.2d: "The vessel, being sold by the United States through the Secretary of the Navy, and delivered to the purchaser, the California corporation, not documented, and the sale by the California corporation to the Canadian corporation of the *nondocumented vessel*, was without the provisions of section 8146 (e). (46 U.S.C.A. § 808.)" (Emphasis added.)

The 1938 amendment was initiated by H.R. 8532 and S. 3078, companion bills introduced in the 75th Congress. Both bills prohibited the sale without Commission approval to non-citizens of "any vessel or any interest therein (1) owned in whole or in part by any person a citizen of the United States, *or* (2) any vessel documented under the laws of the United States."[6] (Italics added.) The language of this proposed amendment to § 9 was substantially similar to the present language of § 37(b) of the Shipping Act of 1916, as amended, 46 U.S.C.A. § 835, which applies only "When the United States is at war or during any national emergency", and which prohibits the transfer to a non-citizen without Commission approval of "(1) any such vessel [6a] or any interest therein, *or* (2) any vessel documented under the laws of the United States, or any interest therein". (Italics added.)

At the hearings before the House Committee on Merchant Marine and Fisheries on H.R. 8532, a witness, H. W. Warley, president of the Maritime Association of the Port of New York, testified the way the proposed amendment was drafted, "it is not at all clear but what it would affect every ship of every flag in which any American citizen had any interest." He also stated the proposed amendment "might preclude, for instance, any ship

5. See Appendix infra for the 1938 amendment to § 9.

6. S. 3078, 75th Cong., 2d Sess.

6a. The antecedent of this phrase is contained in § 37(a) which refers to "any

vessel owned in whole or in part by any person a citizen of the United States or by a corporation organized under the laws of the United States, or of any State, Territory, District, or possession thereof".

that may be built abroad in which an American citizen has an interest, being put under any flag without the consent of the Maritime Commission." [6b]

S. 3078 was thereafter amended to cover any vessel "* * * owned in whole or in part by a citizen of the United States, and documented under the laws of the United States, or the last documentation of which was under the laws of the United States." [6c]

Subsequently the Chairman of the House Committee introduced H.R. 10315, the final version of H.R. 8532 as amended by that Committee, which adopted the Senate version of this provision, except it inserted the phrase "any person" after the words "owned in whole or in part by", and also omitted the first comma contained in the Senate version.[6d] The present statute, which omits both the words "any person" and the comma in question, was adopted in the Conference Report [6e] and became law by the Act of June 23, 1938, c. 600, § 42, 52 Stat. 964.

1. One significant observation may be made on this evolution of § 9. The originally proposed language of H.R. 8532 and S. 3078 would have been broad enough to sustain the Government's contention U. S. documentation alone suffices as basis for forfeiture, and the present argument is made as if the statute had been so enacted. However, the fact is after consideration by the legislative body that language was specifically rejected. Other terms were adopted which were less embracive. Broad coverage was delimited from "any vessel documented" to "the last documentation of which". The House Committee witness Warley directed his objection to the ownership feature of the proposed language. Thereafter, citizen-ownership was narrowed to apply only to U. S. documented vessels. Had the Congress intended, as the Government contends, also to control all vessels which were U. S. documented, regard-

less of owners' citizenship, no change would have been made in the second part of the proposed language which exactly expressed the intent as originally drafted. But change there was in the language, and by it the scope of coverage was reduced below that essential for the accuracy of libellant's suggested interpretation.

As thus changed, the proposed bill was commented upon in House and Senate Reports and in Senate debate. Of the 1938 changes, the House Report [6f] had this to say:

"Section 43: This section amends section 9 of the Shipping Act, 1916, as amended. Section 9 of the Shipping Act, 1916, deals with the requirement of securing the permission of the Commission before an owner of a vessel documented under the laws of the United States can transfer that vessel to foreign registry. As the section is worded in the present law, it may be possible for an owner to surrender the documents of the vessel or arrange to have them surrendered and sell the vessel to an alien, without first securing the consent of the Commission. The amendment is designed to prevent possible evasions and to require the permission of the Commission in all cases of transfer to foreign registry."

Solace for libellant's view is to be had from this Report, but more is claimed than deserved. At best, the comments were equivocal. I do not believe they were offered as a complete explanation of the proposed amendment. If so, they are misleading. The reference to then-existing § 9 mentions only its documentation requirement and its proposed amendment as presumably the only changes to be made. However, § 9 as then in force applied also to vessels "purchased from the board". The amendment cut out these words, yet the House Report fails to mention the deletion and must, there-

6b. Hearings, p. 318.

6c. 83 Cong.Rec. 6529.

6d. H.Rep.No.2168, 75th Cong., 3rd Sess. p. 61.

6e. H.Rep.No.2582, 75th Cong., 3rd Sess., p. 12.

6f. No. 2168, 75th Cong., 3rd Sess., p. 27.

fore, be deemed only a partial explanation of the 1938 amendment. The excerpt is equivocal in not indicating whether "owner" means a citizen-owner, an alien-owner, or both. Both "owner" and "alien" are used, perhaps in contradistinction one to the other. The comment about surrendering documentation and avoiding the then existing law confirms Claimant's meaning of "last documentation" as "expired". Indeed, this would seem the very core of the House comment and an adequate explanation of the "last documentation" clause. The last sentence of the House comment would seem to favor libellant's view that "all cases of transfer" require Commission permission. However, literally, "all cases" were not within the Congressional power to regulate. "All cases of transfer of the type regulated by § 9" may well be the meaning of the statement. If so, it throws us back into the prime inquiry and is of little help. If not, then the objective theory of statutory interpretation would insist the actual words used in the enacted § 9 must control over the unexpressed intent of Congress.

Similarly, the Senate Report on § 9 [6g] states: "Section 9 of the Shipping Act, 1916, makes it unlawful to sell, transfer, or mortgage any vessel 'documented under the laws of the United States' to any alien without obtaining the approval of the Maritime Commission.

"It is possible for the owner of a documented vessel to evade this provision by selling the vessel to another citizen of the United States who does not have it redocumented. The vessel may then be sold to an alien without the consent of the Commission." [6h]

Somewhat the same views of the House Report apply to that of the Senate. One additional feature, favorable to Claimant, is the Senate's understanding of "owner" as "citizen-owner"—note—"selling the vessel to *another* citizen". The Report

also gives further support to "last" as meaning "surrendered or expired" when applied to documentation.

In the Senate debate, in response to a request for an explanation of this amendment, the following statement was made: [6i]

"Mr. Copeland. This section amends Section 9 of the Shipping Act of 1916 which now makes it unlawful to sell, transfer, or mortgage any vessel 'documented under the laws of the United States' to any alien without obtaining the approval of the Maritime Commission.

"It is possible at present for the owner of a documented vessel to evade this provision by selling the vessel to another citizen of the United States who does not have it redocumented. The vessel may then be sold to an alien without the consent of the Commission. The suggested amendment will prevent such an evasion by prohibiting the transfer of any vessel or any interest therein documented under the laws of the United States or owned by a citizen of the United States whether documented or not."

Senator Copeland adds his belief "owner" means "citizen-owner", as did the Senate Report. He expresses the intent "such an evasion"—i. e., sale by citizen-owner to citizen-buyer, surrendered documentation, and sale to alien—will be prohibited by the 1938 amendment. His following words bear out the Government's contention documentation alone is sufficient. However, they cannot control because 1. the Senator's own example of the "evasion" practice designed to be stopped describes the non-documented situation he had in mind, but his later words go far beyond that example and run afoul of the Warley objections which precipitated the change in the originally proposed amendment re citizen-ownership alone being too broad a coverage—some indication the Senator's latter words were broader than intended:

6g. Sen.Rep.No.1618, 75th Cong., 3rd Sess., p. 21.

6h. This was the precise holding in the Helori case, supra.

6i. 83 Cong.Rec. 6529.

2. documentation and citizen-ownership were definitely coupled in the statute enacted, and the Senator's words on the floor could not change that fact; 3. his coupling of the citizenship requirement with the special case of non-documentation as well as with documentation tends to support Claimant's view surrendered, not existing, documentation was meant by the word "last" and also that the "last documentation" clause does not stand alone but rather is but a second part of the citizenship requirement. In any event, one such statement does not solve the problem of construction.

On the assumption the "last documentation" clause is disconnected from citizenship, my understanding of the collective tidbits of legislative history— such as it is, for the purpose of forming a scheme—is this: the revisers were intent on closing the loophole of surrendered or lapsed documentation. The amorphous word, "last", was chosen to denote this former state of documentation, as is perfectly proper within the word's alternative definitions. Vessels thus included in the last clause of § 9's third paragraph are those presently undocumented whose most recent, but lapsed, documentation was under the laws of the United States. Undeniably, The Lake George was a documented vessel at the time of its transfer to Claimant. On the Government's own theory, then, the clause does not apply to that vessel.

■ 2. The Government's principal stand has been made on the isolation of the "last documentation" clause. Met directly on its chosen ground through way of assumption, this argument is found to lack substance. Without the assumption, the argument is weakened even more. If the last clause does not stand by itself, then to be applicable, § 9's third paragraph requires citizen ownership of the vessel plus current U. S. documentation or citizen ownership plus an undocumented vessel whose most recent documentation was under U. S. laws. That this is the proper interpretation of the paragraph is attested by its internal phrasing and somewhat by the legislative history, supra.

Ownership and documentation are the two attributes legislatively selected to identify vessels liable to forfeiture. Ownership is the first stated. Current documentation follows. Then comes "or the last documentation of which". The initial meaning-impression given by this sequence is citizen ownership applies and is required in addition to both documentation situations. On analysis, the probable antecedent of the word "which" strengthens the accuracy of the "relaxed" reading. "Which" refers to "any vessel owned in whole or in part by a citizen of the United States". Therefore, the "last documentation clause" applies only to a citizen owner.

In the legislative history of the 1938 Amendment, there are several indications citizen ownership was intended to qualify the "last documentation" clause. The attempt in H.R. 10315 to broaden "citizen" to "any person" failed in conference, an indication citizen-owners alone were to be included. Senate Report 1618 refers to an owner who sells a vessel "to *another citizen* of the United States who does not have it redocumented"—a clear indication citizen-ownership was to apply to the "last documentation" clause. Senate debate included the same reference. Moreover, were the two not meant to be coupled, the phrasing of the prior law in this respect would undoubtedly have been preserved.

The sense of the statute further persuades interpretation of the paragraph as an entity. Libellant's severance of the "last documentation" clause from citizen-ownership produces a result I cannot ascribe to deliberate Congressional intent. Under the adopted view § 9 applies only to transfers of vessels which are citizen-owned, all such American-documented vessels and those "last" so documented would be included in § 9 and could not be sold to a non-citizen without Commission approval. Only those vessels which are alien-owned or had never been documented under the laws of the United States, or whose "last" but ex-

pired documentation had been under foreign laws could be sold to a non-citizen without Commission approval. The latter vessels never having been a part of the American merchant marine, Congress would have no reason, and doubtful power, to control their transfer. Further, even under libellant's view, the first part of § 9's third paragraph would permit the free transfer, without Commission approval, of vessels owned by non-citizens but documented under United States laws [7] and vessels which had never been U. S. documented. However, if the "last documentation" clause be severed and if "last" therein connotes "undocumented", as is clearly indicated, then libellant's interpretation would isolate the one instance of the non-citizen owner of a vessel whose U. S. documentation had lapsed as requiring Commission approval before transfer to another non-citizen. There is no reason to believe, nor any indication in the legislative history, Congress intended to single out this one situation re owner non-citizenship as requiring Commission approval. Rather, doubt of the Congressional power in this instance and the chosen language are persuasive of the contrary, that only vessels owned by citizens, as defined in the 1916 Act, were regulated to preserve and protect the American merchant marine force.

██ As thus developed, the issue presented is whether the United States,

as owner of The Lake George, is a citizen of itself.[8]

3. § 2, Shipping Act 1916, contains a comprehensive provision re "corporation, partnership, or association as citizen". But nowhere in that section is there any suggestion the United States itself is to be included. "Citizen" as such is not defined in the Act. Its ordinarily understood meaning must thus be taken. In common usage, the term does not include the sovereign itself, which, logically at least, can hardly be termed a citizen of itself. I do not believe this statute employing the phrase "citizen of the United States" can be expanded to include the sovereign, particularly in a libel for forfeiture wherein traditionally the letter of the law is strictly followed and construed. United States v. One 1936 Model Ford V–8 De Luxe Coach, 307 U.S. 219, 226, 59 S.Ct. 861, 83 L.Ed. 1249. Had Congress intended to include the United States within its definition, then, in the words of Justice Holmes, "The ordinary dignities of speech would have led to the mention of the United States", and "when the Act means the United States it says the United States". Davis v. Pringle, 268 U.S. 315, 318, 45 S.Ct. 549, 550, 69 L.Ed. 974. Cf. United States v. Cooper Corporation, 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071.

Judge Hutcheson's recent decision in United States v. Steam Screw Vessel Tito Campanella, (formerly U. S. Ves-

---

7. A corporation may be a citizen under the Registry and Recording laws, Ch. 2, Tit. 46, U.S.C.A., and be entitled to documentation under the laws of the United States of a vessel owned by it, and at the same time be a non-citizen under the Shipping Act of 1916, Ch. 23, Tit. 46, U.S.C.A. The registry laws merely require the corporation be a domestic one, and its president and managing directors be citizens, and expressly provide the oath to obtain registration shall not designate the stockholders, and the registration shall not be affected by sales of stock, 46 U.S.C.A. §§ 11, 20, 15. On the other hand, under the delineation of citizenship contained in § 2 of the Shipping Act, 46 U.S.C.A. § 802, alien stock own-

ership in the corporation may well cause it to be a non-citizen within the meaning of Chapter 23, even though the corporation is a domestic one and its president and managing directors are citizens.

8. Both at the hearing (Tr. 42) and in Reply Brief (pp. 2–3), Government counsel emphasized the citizenship argument was neither essential nor important to their position. Little attention was paid it since they were apparently content to rest the case on the isolation of the "last documentation" clause. However, sufficient vestige remains of the argument, and it is live once the paragraph is considered as a whole, to warrant disposition of it.

sel Samsylarno), E.D.Va., Adm. No. 357, January 27, 1954, is in point. A libel was filed under § 9 for forfeiture of a vessel sold by the Maritime Commission. The owner filed exceptions on the ground that "since the United States of America is a body politic and not a citizen, sales made by the United States of America are not governed by this section." Judge Hutcheson set aside the forfeiture, holding in a letter opinion: "This conclusion is based upon my opinion that Title 46, Section 808 U.S.C., has no application since that section applies only to transfers of a vessel or interest therein 'owned in whole or in part by a citizen of the United States and documented under the laws of the United States, or the last documentation of which was under the laws of the United States.' The vessel was owned by the United States, which is not a citizen, and it was never documented under the laws of the United States. It follows that the transfer of the vessel was not covered by Section 808. Consequently it follows that Title 46, Section 839, U.S.C.A. could have no application."

In the Tito Campanella case, the libel did not allege the sale by the Maritime Commission had been made under the Ship Sales Act of 1946. It would appear the sale had been made under some other statute. Also, that vessel had never been U. S. documented. Nevertheless, the decision on the citizenship question is applicable here.

The Northern No. 41, D.C.S.D.Fla., 297 F. 343, is also in point. In that case, the Government filed a libel against a vessel, seeking foreclosure of a Government mortgage on a preferred basis within the meaning of the Ship Mortgage Act of 1920. The Act gave certain mortgages a preferred status if "the mortgagee is a citizen of the United States." § 37 of that Act incorporated § 2, Shipping Act, 1916. The question presented was whether the United States could be deemed "a citizen of the United States". At page 344 of 297 F. the Court stated: "The word 'citizen,' as applied to the individual, is not attempted to be de-fined by the act. Therefore I take it that the word 'citizen,' as used in subdivision (5) of subsection D, was used by Congress in its ordinarily understood meaning. The Standard Dictionary defines 'citizen' to mean: 'A member of a nation or sovereign state, especially of a republic; one who owes allegiance to a government and is entitled to protection from it.' Tested by this definition, the United States, as a body politic, cannot be a citizen of the United States."

Applying the principle the sovereign may have the same benefit of a statute as a private citizen, the Court then granted preference to the Government mortgage. Here, no question arises of according rights similar to those held by private citizens—they have no forfeiture rights under § 9—to the Government.

Chief Judge Parker, dissenting in Meacham Corp. v. United States, 4 Cir., 207 F.2d 535, 553, certiorari granted, 347 U.S. 932, 74 S.Ct. 631, as to this very problem, said: "It would seem, furthermore, that section 9 of the Shipping Act has no application here, since it applies only to the transfer of a vessel or an interest therein owned in whole or in part by a 'citizen' of the United States and the United States, which owned this vessel, is not a 'citizen' but the nation itself. The purpose of the act was to prevent sales by 'citizens' without the approval of the Maritime Commission, not to limit the power of the government itself to make sales through the Commission." Differing with Judge Parker on an apparent factual finding, the majority of the Court made no comment on this aspect of the case. These were the facts.

In the Meacham case, the Maritime Commission sold a tanker to National Tanker Corporation, a Delaware corporation. National agreed to bareboat charter the vessel to United Tanker Corporation, a Delaware corporation, which in turn time-chartered the vessel to China Trading and Industrial Development Corporation, a Chinese corporation, which in turn voyage chartered the vessel to Chinese Petroleum Corporation, also a Chinese corporation.

In addition to the bareboat charter from National to United, the stock of National was deposited in escrow, and United was given an irrevocable option to purchase this stock. National engaged in no business other than the making of the bareboat charter. The charter hire was fixed at an amount equal to the price of the vessel, and the option to purchase the stock was fixed at a price equal to an agreed commission payable to the National group. Subsequently, legal title to the vessel was transferred by National to a newly formed corporation known as the Meacham Corporation, the stock of which was ultimately acquired by a charitable foundation known as The China International Foundation, Inc.

The libel of information against the Meacham alleged in Article XXI that, by reason of the premises and a transfer alien, the vessel Meacham must be forfeited under Section 9 of the Shipping Act of 1916 "in that, having been duly sold by the United States Maritime Commission to a person (meaning National Tanker Corporation) who purported to be a citizen of the United States, *she was thereafter sold and/or otherwise transferred to a person not a citizen of the United States* without the prior approval of the United States Maritime Commission, contrary to the form of statutes of the United States in such cases made and provided, namely, Sections 2 and 9 of the Shipping Act of 1916, as amended, 46 U.S.C. 802 and 808"[9] (Italics added.)

In the Meacham libel, the Government alleged not only the transfer by the Maritime Commission to National Tanker Corporation but a subsequent transfer by National to a non-citizen, whereas in the libel in the present case the only transfer alleged is the one by Maritime Commission to United States Petroleum Carriers, Inc. This is the fundamental distinction between the two cases.

The District Court held National was merely an alter ego of United; United did not qualify as a citizen of the United States so that neither did National; and therefore the vessel must be forfeited. It stated that there was "a transfer of the tanker to United, either from the Commission or from National. In either view there was a transfer of the ship, a transfer from a citizen, within the notice of sec. 9 of the Act. The United States may invoke the statute and enforce it, *whether National or the Commission was the transferor.*"[10] (Italics added.)

In other words, the District Court held § 9 applied to a direct transfer by the Maritime Commission to National Tanker Corporation. If this decision had been allowed to stand, then the Meacham case would be adverse authority to the holding I make here.

On appeal, the majority of the Court did not hold any violation of the statute occurred when the Maritime Commission made the sale to National, "which in the beginning was the creature of Overseas" 207 F.2d at page 547, a truly citizen corporation, but held instead that the violation occurred when National transferred the vessel to United Tanker Corporation, which the Court held was not a citizen after lengthy discussion of its formation. Thus, the Court stated, 207 F.2d at page 543:

"The violation of the statutes occurred on May 14, 1948 *when the transfer of the ship by National to United,* contemporaneously with the sale of the ship by the Commission to National, *was made without the approval of* the Commission." (Italics added.)

Chief Judge Parker, however, addressed himself to the Government's contention the initial transfer from the Maritime Commission to National, was made in violation of § 9 and a forfeiture should be predicated upon such a transfer. As already indicated, he stated § 9

9. Meacham appeal, Appx. to appellant's brief, Vol. I, p. 30.

10. 107 F.Supp. 997, 1005.

**226**

had no application because it relates to vessels owned by a citizen of the United States, and the "United States, which owned this vessel, is not a 'citizen' but the nation itself." 207 F.2d at page 553. He also stated "it cannot be said that a transfer that the Commission itself made was made without the approval of the Commission." 207 F.2d at page 551.

The majority of the Court did not expressly disagree with the positions so stated by Judge Parker, and based the forfeiture on the subsequent transfer from National to United as to which § 9 clearly applied. Thus, none of the three judges on the appeal subscribed to the Government's position, again urged in the case at bar, that the United States could be regarded as a citizen of the United States.

I, therefore, conclude the Fourth Cause of Forfeiture stated in the libel should be dismissed for failure to state a cause of forfeiture. Order in accordance with this opinion may be submitted on notice.

Appendix

Section 9, Shipping Act, 1916, as Originally Enacted, and Subsequently Amended:

1916 Act, 39 Stat. 730.

(3)

"When the United States is at war, or during any national emergency the existence of which is declared by proclamation of the President, no vessel registered or enrolled and licensed under the laws of the United States shall, without the approval of the board, be sold, leased, or chartered to any person not a citizen of the United States, or transferred to a foreign registry or flag. No vessel registered or enrolled and licensed under the laws of the United States, or owned by any person a citizen of the United States, except one which the board is prohibited from purchasing, shall be sold to any person not a citizen of the United States or transferred to a foreign registry or flag, unless such vessel is first tendered to the board at the price in good faith offered by others, or, if

no such offer, at a fair price to be determined in the manner provided in section ten."

1918 Act, 40 Stat. 900.

(3)

"No vessel documented under the laws of the United States or owned by any person a citizen of the United States or by a corporation organized under the laws of the United States or of any State, Territory, District, or possession thereof, except one which the board is prohibited from purchasing, shall be sold to any person not a citizen of the United States or transferred to or placed under a foreign registry or flag, unless such vessel is first tendered to the board at the price in good faith offered by others, or, if no such offer, at a fair price to be determined in the manner provided in section ten."

1920 Act, 41 Stat. 994.

(3)

"It shall be unlawful to sell, transfer or mortgage, or, except under regulations prescribed by the board, to charter, any vessel purchased from the board or documented under the laws of the United States to any person not a citizen of the United States, or to put the same under a foreign registry or flag, without first obtaining the board's approval."

1938 Act, 52 Stat. 964, 46 U.S.C.A. § 808.

(3)

"Except as provided in section 611 of the Merchant Marine Act, 1936, as amended, it shall be unlawful, without the approval of the United States Maritime Commission, to sell, mortgage, lease, charter, deliver, or in any manner transfer, or agree to sell, mortgage, lease, charter, deliver, or in any manner transfer, to any person not a citizen of the United States, or transfer or place under foreign registry or flag, any vessel or any interest therein owned in whole or in part by a citizen of the United States and documented under the laws of the United States, or the last documentation of which was under the laws of the United States."